WAGNER CHOI & VERBRUGGE
Attorneys at Law

CHUCK C. CHOI
NEIL J. VERBRUGGE
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
nverbrugge@hibklaw.com
aito@hibklaw.com

Proposed Attorneys for Debtor
and Debtor-in-Possession

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>CUZCO DEVELOPMENT U.S.A., LLC,<br><br>      Debtor and<br>      Debtor-in-possession. | Case No. 16-00636<br>(Chapter 11)<br><br>Hearing:<br>Date: July 18, 2016<br>Time: 9:30 a.m.<br>Judge: Hon. Robert J. Faris |

### MOTION FOR ORDER AUTHORIZING DEBTOR
### TO REJECT COMMERCIAL LEASE FOR SPACE #I-102 (SUPERMARKET)
### WITH YEDANG ENTERTAINMENT USA, INC.

CUZCO DEVELOPMENT U.S.A., LLC, debtor and debtor-in-possession herein (the "Debtor"), hereby moves this Court, pursuant to 11 U.S.C. § 365,

1

Federal Rule of Bankruptcy Procedure 6006 and LBR 6006-1, for entry of an order authorizing the rejection of that certain commercial lease for Space #I-102 ("Supermarket") with YEDANG ENTERTAINMENT USA, INC., as further described herein ("Motion"). In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

3. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii (the "Court") on June 20, 2016.

4. The Debtor continues to operate and manage its business, as debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

## BACKGROUND

5. The Debtor's primary asset is a shopping center located on approximately 3.5 acre parcel of commercial real estate located at 805-919

Keeaumoku Street which is commonly known as the Keeaumoku International Village or the Keeamoku Shopping Center (the "Keeaumoku Property").

6. The Keeaumoku Property contains a number of low-rise buildings with commercial tenants, including Sorobol Korean Restaurant and numerous other retail businesses. The supermarket in the Keeaumoku Property is the "anchor" tenant and drives significant traffic to other businesses in the shopping center.

7. The Keeaumoku Property is encumbered by a first mortgage in favor of East West Bank in the approximate amount of $25,070,754.83. The Debtor is also liable for accrued real property taxes totaling approximately $600,000.00. Although the Debtor's Schedules and Statement of Financial Affairs have not been filed as of this date, the Debtor estimates that its undisputed unsecured indebtedness, including tenant deposits, totals less than $500,000. The Property is worth approximately $45 million. Thus this estate is solvent.

**Mr. Doo Sup Byun's Control of Cuzco and Yedang Entities**

8. From 2007 to his death in June, 2013, Mr. Doo Sup Byun owned or controlled, inter alia, the following entities: the Debtor, its parent company Cuzco Korea Development, Inc. ("Cuzco Korea"), Yedang USA and its parent, Yedang Entertainment Korea, Inc. ("Yedang Korea") (the foregoing entities are referred to as the "Korea-US Entities").

9. During this time period, Mr. Byun exercised control over all four entities, and caused numerous complicated financial transactions to occur between the four entities for his benefit. Mr. Byun was married to Soo Kyung Yang, a well-known Korean singer. Ms. Yang's younger brother is named Chung Youl Yang. He owns Yang Enterprises, Inc. ("YEI"), which operated the Keeaumoku Supermarket on the Keeaumoku Property from approximately October, 2011 to early April, 2016, when the Debtor evicted YEI for failure to pay three months' rent.

### 2011: YEI Lease

10. On or about October 1, 2011, the Debtor as Landlord, and YEI, as tenant, entered into a commercial lease ("Lease") for the premises described in the lease as Space I-102 consisting of approximately 15,359 square feet of space located at 835 Keeaumoku Street, #I-102 (the "Supermarket Premises"). The base monthly rent for the Lease is $18,957, and monthly CAM is $21,300 per month. *See* **Exhibit "1"**.

### 2013: Purported Assignment of YEI Lease to Yedang USA

11. On or about January 1, 2013, YEI, as assignor, and Yedang USA, as assignee, entered into an assignment of the Lease for the Supermarket Premises ("Assignment"). *See* **Exhibit "1"**.

4

76452

U.S. Bankruptcy Court - Hawaii   #16-00636   Dkt # 6   Filed 06/20/16   Page 4 of 13

12. The Assignment was executed by Mr. Doo Sup Byun on behalf of Yedang USA. However, YEI contends that it never actually obtained any consideration for the purported "Assignment" of the Lease to Yedang USA.

13. As evidence the Assignment between YEI and Yedang USA was never intended to be enforced by Yedang USA, YEI and Yedang USA agreed to waive enforcement of the Assignment, and did not perform under the Assignment.

14. Although the terms of the Assignment required YEI to deliver the Supermarket Premises to Yedang USA, Yedang USA (by its President Mr. Doo Sup Byun) agreed that YEI would continue to be the tenant and operator of the Supermarket.

15. After the Assignment, YEI continued to be the tenant and occupied, managed, and operated the Supermarket Premises for years without objection or complaint by Yedang USA.

16. Although the terms of the Assignment provided that Yedang USA would pay rent (and YEI would also remain liable for rent), Yedang USA did not pay rent; instead, YEI paid rent until February 2016, before defaulting on payments and closing down in April, 2016. The Debtor is informed that at the time YEI closed its operations, its secured and unsecured debts exceeded $1 million.

17. Upon information and belief, Mr. Byun created the purported "Assignment" between Yedang USA and YEI as a "sham" transaction to disguise

5

certain money laundering transactions between the Korea-US Entities controlled by him, and that benefitted him personally.

### 2013: Mr. Doo Sup Byun's Death

18. On or about June 4, 2013, Mr. Byun suddenly died in Korea under suspicious circumstances. Sometime after Mr. Byun's death, his brother Mr. Jong Byun took over control of Yedang Korea and Yedang USA. It is unclear by what legal authority or right Mr. Jong Byun was able to take over control of Yedang Korea and Yedang USA.

### 2014: Yedang USA initiates ejectment action against YEI which asserts the Assignment is Void and Unenforceable

19. On August 4, 2014, after Mr. Jong Byun took over control of Yedang USA, he caused Yedang USA to file a Complaint for Ejectment against YEI. *See* **Exhibit "2"** (Docket Sheet from Civil No. 1CC14-1-002268).

20. On September 12, 2014, YEI filed a motion to dismiss the complaint for ejectment asserting that YEI continued to hold the lease, and that the assignment to Yedang USA was void and unenforceable because it was never intended to be enforced, and for lack of consideration. *See* **Exhibit "3"** (YEI Motion to Dismiss and Declaration of Chung Youl Yang).

21. Thereafter, YEI and Yedang USA agreed to arbitrate the dispute over the purported Assignment.

22. During the pendency of the dispute, at all relevant times, YEI was in possession of the Supermarket Premises and operated the Supermarket.

### 2016: Debtor initiates summary possession action against YEI

23. On March 21, 2016, the Debtor served a demand letter to YEI for payment of rent based on the Tenant's default in payment of 2 months of monthly lease rent (February and March 2016) and late fees of $86,514.83. *See* **Exhibit "4"**. At the time, YEI was in possession of the Supermarket Premises but was in the process of liquidating its inventory.

24. On March 28, 2016, the Debtor also notified Yedang USA of the default. *See* **Exhibit "5"**.

25. On March 30, 2016, the Debtor filed its Complaint for summary possession against YEI commencing Civil No. 1RC16-1-002634. *See* **Exhibit "6"** (Docket Sheet from Civil No. 1RC16-1-002634).

26. On April 6, 2016, the District Court orally granted the Debtor's request for default judgment of possession against Yang, and ordered the issuance of a writ of possession against YEI. Thereafter, on April 7, 2016, the District Court entered a Judgment for Possession, and a Writ of Possession against YEI,

27. On April 6, 2016, Yedang USA filed its motion for leave to file an answer to the Debtor's complaint against YEI. *See* **Exhibit "7"** (Yedang USA's Motion).

28. The Debtor opposed Yedang USA's motion for leave to file an answer to the Debtor's complaint against YEI because Yedang USA was not an "indispensable" party to the action. *See* **Exhibit "8"** (Debtor's Opposition).

29. On April 25, 2016, at oral hearing, the Presiding Judge denied Yedang USA's motion or leave to file an answer to the Debtor's complaint.

**2016: Debtor initiates summary possession action against Yedang USA**

30. On April 6, 2016, the Debtor served a demand letter to Yedang USA for payment of rent based on the Tenant's default in payment of three months of monthly lease rent (February, March, and April 2016) and late fees of $135,925.75. *See* **Exhibit "9"**.

31. At the time, the Debtor understood that Yedang USA was claiming to be the "tenant" by virtue of the purported "Assignment" of the Lease.

32. On April 15, 2016, based on Yedang USA's counsel's representations that Yedang USA was the actual putative tenant under the purported assignment, the Debtor filed a complaint for summary possession against Yedang USA commencing Civil No. 1RC16-1-2981. *See* **Exhibit "10"** (Docket Sheet from Civil No. 1RC16-1-2981).

33. On April 22, 2015, Yedang USA filed an Answer. In its Answer, Yedang USA admitted that it never had "possession" of the Supermarket Premises. *See* **Exhibit "11"**.

34. On April 25, 2016, the Debtor sent Yedang USA a notice of termination of the Lease, effective April 26, 2016. *See* **Exhibit "12"**.

### Debtor Has Obtained New Tenant for Supermarket

35. After the Debtor terminated the Lease by sending the notice of termination of the Lease to Yedang USA, a new tenant, Eco Supermarket, Inc. ("Eco"), began operating in the Supermarket Premises. Eco has paid substantial lease rent to the Debtor for the Supermarket Premises.

36. Shortly before Eco opened the supermarket for business, in the late evening of May 9, 2016, Yedang USA's representatives, Shaun Kim and Chang Jin Kim, without permission or authorization from either Eco or the Debtor, tried to break into the Supermarket Premises by attempting to break and/or change the locks to the doors to the Supermarket Premises. The Debtor was forced to call the Honolulu Police Department to respond to this unauthorized attempt by Yedang USA to enter the Supermarket Premises. After the Honolulu Police arrived on the scene, in the early morning of May 10, 2016, the Honolulu Police issued a trespass warning to Shaun Kim. *See* **Exhibit "13"**.

### 2016: Yedang USA files Circuit Court complaint and Debtor and Yedang USA agree to dismiss Summary Possession Action

37. On May 19, 2016, Yedang USA filed a complaint against the Debtor in State Circuit Court commencing Civil No. 16-1-0978-05 (KTN) alleging: (1) Breach of Lease, (2) Breach of Implied Covenant of Good Faith and Fair Dealing,

9

(3) Trespass, (4) Fraud, (5) Unjust Enrichment, (6) Conversion, (7) Interference with Prospective Business Advantage, (8) Declaratory Judgment, and (9) Injunction.

38. Thereafter, on June 3, 2016, the Debtor and Yedang USA (through its new counsel) stipulated to dismissal of the Debtor's summary possession action bearing Civil No. 1RC16-1-2981. The Debtor had no need to proceed with the summary possession action against Yedang USA who was not in possession, and admitted in its Answer that it never had "possession" of the Supermarket Premises.

## RELIEF REQUESTED AND BASIS

39. While Debtor believes the Lease was validly terminated prior to the Petition Date, the Debtor has filed this Motion in an abundance of caution to confirm its decision to terminate the Lease.

40. Pursuant to Section 365(a), of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to reject the Lease subject to, and without prejudice to, the Debtor's right to argue that the Lease was validly terminated or otherwise expired pre-petition, and/or the Lease was unrecorded and void pursuant to 11 U.S.C. § 544(a), or other legal arguments.

41. Section 365(a) of the Bankruptcy Code authorizes the assumption or rejection of any executory contract or unexpired lease of the debtor subject to court approval. *See* 11 U.S.C. § 365(a).

42. Although the Bankruptcy Code does not provide guidelines for use in determining whether to approve the debtor in possession's decision to assume or reject an executory contract or unexpired lease, courts have overwhelmingly applied a "business judgment" test. *See, e.g., Durkin v. Benedor Corp., (In re Benedor G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (context of rejection); *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800 (Bankr. 9th Cir. 1982) (rejection); *Richmond Leasing Co. v. Capitol Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (assumption).

43. In applying the business judgment standard, courts show great deference to a debtor's decision to reject executory contracts. *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 655, 670 (9th Cir. 2007) ("in evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate"); *In re G.I. Industries, Inc.*, 204 F.3d 1276 (9th Cir. 2000); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*; 756 F.2d 1043, 1046-47 (4th Cir. 1985); *Summit Land Co. v. Allen (In re Summit Land Co.)*,

13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

44. The Debtor has elected to reject the Lease pursuant to 11 U.S.C. § 365. The Debtor's decision to reject the Leases is supported by sound business judgment and should be approved.

45. In April 2016, unable to pay rent or its creditors, YEI liquidated its inventory and voluntarily vacated the Supermarket Premises. The Debtor could not afford to have the "anchor space" remain vacant. Thus the Debtor made the business decision to bring in a new Supermarket operator. Eco has invested substantial sums in renovating and cleaning the Supermarket Premises and ordering new inventory from both Hawaii and the West Coast. The Debtor is informed that Eco was unable to obtain credit because YEI failed to pay hundreds of thousands of dollars to various vendors.

46. It is necessary to obtain an order rejecting the Lease (that was terminated pre-petition) because the Debtor cannot afford any further interruption in the supermarket business and because a court order would discourage Yedang USA's unlawful and unauthorized attempts to break into the Supermarket Premises which would eliminate disruption to Eco's operations, and business generally at the Keeaumoku Property.

47. The Debtor has concluded that it would be in the best interest of the estate and its creditors for the Debtor to promptly reject the Lease.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion, and enter an order: (a) approving the rejection of the Lease, effective as of the Petition Date, subject to, and without prejudice to, the Debtor's right to argue that the Lease was validly terminated or otherwise expired pre-petition, and/or the Lease was unrecorded and void pursuant to 11 U.S.C. § 544(a), or other legal arguments; and (b) granting such other relief as the Court deems fair and just.

DATED: Honolulu, Hawaii, June 20, 2016.

/s/ Neil J. Verbrugge
CHUCK C. CHOI
NEIL J. VERBRUGGE
ALLISON A. ITO
Proposed Attorneys for Debtor and
Debtor-in-Possession