Date Signed:
February 9, 2018



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>CUZCO DEVELOPMENT U.S.A., LLC,<br><br>      Debtor. | Case No. 16-00636<br>Chapter 11<br><br>Related Dkt.: 592 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTION TO CLAIMS OF USTC HI, INC.

Cuzco Development U.S.A., LLC, the reorganized debtor ("Cuzco"), objected to Claim Nos. 34 and 35 filed by USTC HI, Inc. ("USTC").[1] The court held an evidentiary hearing on January 17 and 18, 2018. Chuck C. Choi, Esq. and John S. Rhee, Esq. appeared for Cuzco, and Leighton K. Lee, Esq. appeared for USTC.

Based on the evidence received, I make the following

---

[1] Dkt. 592.

## FINDINGS OF FACT

Cuzco is a Hawaii limited liability company that owns a parcel of real estate on Keeaumoku Street in Honolulu called the "Keeaumoku Shopping Center." The Keeaumoku Shopping Center consists of multiple buildings rented to commercial tenants.

Doo Sup Byun, a Korean national, was a founder and (until his death) the person in control of Cuzco. Mr. Byun authorized his long-time friend and business associate, Hyung Soo Jang, to manage the Keeaumoku Shopping Center for Cuzco.

In June 2013, Mr. Byun committed suicide. However, Mr. Jang continued to oversee the operation of the Keeaumoku Shopping Center for Cuzco. Mr. Byun's death triggered a struggle for control of Cuzco's Korea-based parent company, in which Mr. Jang eventually became involved.

Under a lease dated August 18, 2014 ("Cuzco Lease"), Cuzco rented Space I-203 (the "Premises") in the Keeaumoku Shopping Center to USTC. Mr. Jang signed the Cuzco Lease on behalf of Cuzco and Casey Lee signed as president of USTC. USTC operates a martial arts studio in the Premises.

From the inception of the Cuzco Lease and continuing to the present, the Premises suffered water intrusion due to roof leaks. Nevertheless, USTC paid all of the rent that became due under the Cuzco Lease until October 2015.

Mr. Jang caused Cuzco to enter into a master lease dated June 26, 2015,

U.S. Bankruptcy Court - Hawaii    #16-00636    Dkt # 846    Filed 02/09/18    Page 2 of 12

pursuant to which Cuzco ostensibly leased the entire Keeaumoku Shopping Center to JCCHO Hawaii, LLC ("JCCHO"). Jae Hyon Cho, who is apparently a friend or business associate of Mr. Jang, controls JCCHO.[2]

On or about July 30, 2015, Mr. Jang sent a letter on Cuzco's letterhead to all tenants in the Keeaumoku Shopping Center. The letter stated that, effective on August 1, 2015, JCCHO would be managing the Keeaumoku Shopping Center. Mr. Jang also orally informed Mr. Lee (of USTC) about the master lease.

Beginning in August 2015, JCCHO entered into new leases with the tenants at the Keeaumoku Shopping Center. Mr. Jang told Mr. Lee that JCCHO would enter into a new lease of the Premises with USTC.

In September 2015, Mr. Jang died. After his death, Jae Hyon Cho and his associates continued to manage the Keeaumoku Shopping Center.

USTC entered into a new lease with JCCHO, dated October 15, 2015 ("JCCHO Lease"). The material terms of the Cuzco Lease and the JCCHO Lease are the same, with two exceptions. First, the term of the leases was different. The Cuzco Lease created a month-to-month tenancy and included a provision that stated:

---

[2] Cuzco has challenged the validity of the master lease in separate proceedings between Cuzco and JCCHO. Among other things, Cuzco argues that the master lease was an unauthorized attempt by Mr. Jang and Mr. Cho to wrest control of the Keeaumoku Shopping Center from Cuzco and its Korean parent company. Neither party asks me to decide that question in this contested matter. Therefore, for purposes of this contested matter, I assume without deciding that the master lease is valid and enforceable in accordance with its terms.

3

U.S. Bankruptcy Court - Hawaii   #16-00636   Dkt # 846   Filed 02/09/18   Page 3 of 12

"[p]rovided that [USTC] is not in default, [Cuzco] will honor this lease for Two (2) years . . . ." The JCCHO Lease had an initial term of thirty-three months and gave USTC the option to extend the lease for an additional three years. Second, the rent rates were different. The Cuzco Lease monthly rent was $5,500 including operating expenses. The JCCHO Lease provided for a base rent of $2,761 per month (with specified increases each year) plus operating expenses beginning at $2,510 per month (subject to future adjustments based on changes in actual operating expenses).

After Mr. Lee signed the JCCHO Lease, he raised the issue of water intrusion in the Premises. JCCHO then delivered a letter dated October 15, 2015 (the "rent abatement letter") to USTC. (The rent abatement letter bears the same date as the JCCHO Lease, but based on Mr. Lee's uncontroverted testimony, I find that it was signed and delivered at a later date.) The rent abatement letter states:

> This memo serves to memorialize our agreement that effective from the date of your lease, we will not require lease rent payments to be made until such time that we are able to correct the roof leaks that are affecting your martial arts studio space (SPACE: BUILDING I-203/204).
>
> When we have completed the roof repairs, you will be notified and lease rent payments will then commence.

Cuzco questions the genuineness of the rent abatement letter, arguing (in summary) that it is a recent fabrication. I find, by a preponderance of the evidence, that the JCCHO Lease and the rent abatement letter were executed by JCCHO (and USTC, in the case of the lease) and delivered, and that JCCHO and USTC intended

4

that they would be enforceable in accordance with their terms.

Cuzco also questions whether the rent abatement letter was validly authorized. If the master lease between Cuzco and JCCHO is valid (as I assume for purposes of this contested matter), then JCCHO, Mr. Jang, and Mr. Cho had actual authority to enter into the JCCHO Lease and the rent abatement letter with USTC. Even if the master lease is not valid, Cuzco and Mr. Byun gave Mr. Jang actual authority to manage the Keeaumoku Shopping Center for Cuzco. Mr. Jang, acting for Cuzco, represented to USTC that JCCHO was taking over management of the Keeaumoku Shopping Center, and USTC reasonably relied on that authority and representation when it entered into the JCCHO Lease.

Prior to the execution of the master lease between Cuzco and JCCHO, Soo Kyung Yang, who is the widow of Mr. Byun and a shareholder of Cuzco's Korean parent corporation, filed a derivative action in the state circuit court against Cuzco, Mr. Jang and others regarding the management and sale of the Keeaumoku Shopping Center in March 2015.[3] In late October 2015, the state circuit court appointed a receiver in the derivative action. The receiver began to collect rents instead of JCCHO.

In early February 2016, the parties to the derivative action entered into a stipulation, which terminated the receivership and restored Cuzco's control of the

---

[3] *Soo Kyung Yang v. Cuzco U.S.A., Inc. et al.*, Civil No. 15-1-0378-03.

U.S. Bankruptcy Court - Hawaii   #16-00636   Dkt # 846   Filed 02/09/18   Page 5 of 12

Keeaumoku Shopping Center. However, Mr. Jang was no longer in control of Cuzco.

In February 2016, Cuzco, now under the control of Mr. Dong Woo Lee (a friend of Ms. Yang, who is Mr. Byun's widow), sent USTC notice of termination of the Cuzco Lease for alleged nonpayment of rent. In March 2016, Cuzco filed a summary possession action against USTC in state district court.[4] USTC responded that it was not delinquent in paying rent because the JCCHO Lease and the rent abatement letter superseded the Cuzco Lease and provided that USTC did not owe any rent until the roof leaks were corrected.

In April 2016, the state district court entered an order requiring USTC to pay rent of $5,500 per month (the amount of rent reserved under the Cuzco Lease) into a rent trust fund commencing on May 1, 2016. USTC has complied with this order (although it may have paid rent a few days late on some occasions).

The water infiltration problems have never been corrected. Cuzco has attempted to patch the roof above the Premises several times, but Cuzco's property manager admitted that the problems will not be corrected until Cuzco replaces the roof on the building. Replacement of the roof would cost $15,000 to $20,000, and Cuzco has not had sufficient cash to pay that amount.

USTC's sole claim is that, by virtue of the rent abatement letter, it is entitled to repayment of the rent that it has paid into the state district court rent trust fund.

---

[4] *Cuzco Development U.S.A., LLC v. USTC HI, Inc.*, Civil No. 1RC16-1-1891.

USTC does not claim any other damages as a result of the roof leaks. For example, although Mr. Lee testified that the leaks sometimes forced USTC to cancel classes, USTC did not offer any evidence of lost revenues or profits.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

The bankruptcy court has personal jurisdiction over the parties and jurisdiction over the subject matter.[5] Venue is proper in this district.[6] This is a core proceeding in which the bankruptcy court may enter a final judgment.

USTC filed a timely proof of claim. Therefore, USTC's claim is deemed allowed unless a party objects.[7] A properly filed proof of claim is also "prima facie evidence as to the validity and the amount of the claim."[8]

Cuzco has objected to USTC's claim.[9] Therefore, the court must "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ."[10]

A claim is allowed to the extent that it is enforceable under applicable

---

[5] *See* 28 U.S.C. §§ 157, 1334.

[6] *See id.* §§ 1408-1409.

[7] 11 U.S.C. § 502(a).

[8] Fed. R. Bankr. P. 3001(f).

[9] Fed. R. Bankr. P. 3007.

[10] 11 U.S.C. § 502(b).

7

nonbankruptcy law, unless one of the special exceptions to allowance applies.[11]

As the objecting party, Cuzco bears the initial burden of coming forward with sufficient facts that carry probative force at least equal to the allegations contained in the proof of claim.[12] If Cuzco provides "sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant [USTC] to prove the validity of the claim by the preponderance of the evidence."[13]

If the master lease is valid (as I assume for purposes of this contested matter), then the JCCHO Lease between JCCHO and USTC is valid and enforceable against Cuzco. Under the master lease, JCCHO had the authority to sublease the Premises to USTC. Even if the master lease was invalid, Cuzco gave actual or apparent authority to Mr. Jang to manage the property, Mr. Jang told USTC that JCCHO would take over management of the Keeaumoku Shopping Center, and USTC was entitled to rely on that authority and representation when it entered into the JCCHO Lease.

Cuzco argues that it does not owe USTC the rent that is being held in the rent trust fund, and that USTC's sole remedy is to seek relief in the state district court. But the dispute about the rent monies turns on the underlying questions of whether the

---

[11] *Travelers Cas. & Sur. Co. of Am. v. PG & E,* 549 U.S. 443, 449 (2007).

[12] *Lundell v. Anchor Const. Specialist, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000), citing *Wright v. Holm* (*In re Holm*), 931 F.2d 620, 623 (9th Cir. 1991).

[13] *Id.,* citing *In re Consol. Pioneer Mortg.,* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3rd Cir. 1992)).

U.S. Bankruptcy Court - Hawaii   #16-00636   Dkt # 846   Filed 02/09/18   Page 8 of 12

rent abatement letter is binding on Cuzco and whether USTC's proofs of claim should be allowed or disallowed. The bankruptcy court can and should determine whether and to what extent a contract binds Cuzco, a debtor in bankruptcy.

Cuzco also argues that the rent abatement letter is unenforceable because it is not supported by consideration. Because JCCHO signed and delivered the rent abatement letter, after the parties signed and delivered the JCCHO Lease, the rent abatement letter is a modification of the JCCHO Lease.

Under Hawaii law, "[a] modification of a contract must be supported by new consideration."[14] "Consideration is defined as a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment."[15] "A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."[16] Consideration under a modified agreement can be "(a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation."[17]

---

[14] *Shanghai Inv. Co. v. Alteka Co.*, 92 Haw. 482, 496 (2000), *overruled in part on other grounds* by *Blair v. Ing*, 96 Haw. 327 (2001), citing *Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 7 Haw. App. 196, 204–05 (1988); *Rapozo v. Keliinoi,* 27 Haw. 763, 768 (Terr. Haw. 1924).

[15] *Id.* citing *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997).

[16] *Young v. Allstate Ins. Co.*, 119 Haw. 403, 428 (2008) quoting *Restatement (Second) of Contracts* § 71(2)(1981).

[17] *Id.* (citation omitted); *See also, Shannon v. Waterhouse*, 58 Haw. 4, 6 (1977)(where the Hawaii Supreme Court held that forbearance in asserting a right is sufficient consideration).

9

Consideration exists if *either* one party benefits *or* another party incurs a detriment. For example, in the *Shanghai Inv.* case, the Hawaii supreme court held that consideration existed when one party benefitted from a reduction in the interest rate charged on a note. Consideration existed in this case because the rent abatement benefitted USTC and temporarily eliminated Cuzco's right to collect rent from USTC.

Further, USTC did at least arguably incur a detriment. Various provisions of the JCCHO Lease suggest that JCCHO, as lessor, was responsible for maintaining the roof[18] and Cuzco admitted that the roof was never properly maintained. USTC was arguably entitled to terminate the lease or to seek other remedies based on the lessor's failure to properly maintain the roof. Instead, in reliance on the rent abatement letter, USTC elected not to terminate the lease or take other action, and promised to resume rent payments as soon as the roof leaks were corrected. "A substitute for consideration

---

[18] Section 2.11 defines "Operating Expenses" to include "maintenance, repair and upkeep of all equipment and all interior and exterior (including roofing and structural members) areas [sic] of the Center," and section 5.02 permits the lessor to pass on these expenses to the tenants pro rata. Under section 2.13, the upper boundary of the "Premises" is "the unfinished bottom of the roof slab . . . ." Thus, USTC did not control, and arguably did not have the right to access, the top surface of the roof in order to make repairs. Section 13.01 specifies the tenant's obligation to make repairs, but does not mention any repairs to the roof. Section 13.06 obligates the lessor to repair "the structural portions of the Premises and/or the Building," subject to certain limitations. Section 18.05 entitles the tenant to a rent abatement in case of "substantial damage or destruction to the Premises . . . ." This is not to say, however, that USTC was clearly entitled to a rent abatement or other relief; the JCCHO Lease includes extensive provisions that limit the lessor's obligation to make repairs and its liability, including sections 3.06, 3.07, 27.01, 27.02, and 33.01.

10

is detrimental reliance."[19]

Cuzco argues that the rent abatement letter was a grossly unequal bargain. But this is irrelevant. Consideration need not have quantifiable financial value.[20] "[I]f a person chooses to make an extravagant promise for an inadequate consideration, it is entirely his own affair."[21]

Further, the bargain is not as unequal as it might appear. Cuzco's property manager testified at trial that replacing the roof of the building, in which the Premises are located, would cost $15,000 to $20,000. This is equivalent to three or four months rent, under either of the USTC leases. If Cuzco had promptly made the roof repairs, the bargain would have been reasonably equal. Cuzco chose not to do so.

Therefore, Cuzco's objection to USTC's claim is OVERRULED. Cuzco is not entitled to collect rent for the period from November 1, 2015 to the present day, and continuing until the roof leaks are corrected. USTC is entitled to a refund of any rent it has paid for that period. Cuzco may satisfy this claim by stipulating with USTC to return of the rent trust fund held by the state district court to USTC and to terminate USTC's obligation to make further deposits. Counsel for USTC shall submit a

---

[19] *Young*, 119 Haw. at 428.

[20] *Shanghai Inv. Co.*, 92 Haw. at 496, citing *Long v. Buehler*, 8 Kan. App.2d 23, 28 (1982) and *State of Colorado Dept. of Revenue v. Adolph Coors Company*, 724 P.2d 1341, 1347 (Colo. 1986).

[21] *Dabbs v. International Minerals & Chemical Corp.*, 339 F.Supp. 654, 664 (N.D. Miss. 1972).

U.S. Bankruptcy Court - Hawaii   #16-00636   Dkt # 846   Filed 02/09/18   Page 11 of 12

proposed separate judgment consistent with this decision.

## END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW